NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KIM MICHAEL GREWE, *Appellant.*

No. 1 CA-CR 17-0172
FILED 3-20-2018

Appeal from the Superior Court in Mohave County
No. S8015CR201600402
The Honorable Steven F. Conn, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**W I N T H R O P**, Presiding Judge:

**¶1**          Kim Michael Grewe ("Grewe") appeals his conviction and sentence for failure to remain at the scene of an accident involving injury. Grewe argues insufficient evidence supports his conviction, and he challenges the trial court's order granting the State's motion *in limine.*  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**          Grewe was driving his motorcycle in the late morning when he struck the victim who was crossing the street.  The victim spun and fell to the ground.  Grewe continued driving and, shortly thereafter, a witness who observed the accident confronted Grewe at an intersection and told him he had "run over some guy."  The collision caused pain and bruising on the victim's leg and side.

**¶3**          The State charged Grewe with one count of failure to remain at the scene of an accident involving injury, a class 5 non-dangerous felony. The jury found Grewe guilty, and the court imposed two years of supervised probation.  Grewe timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A)(1) (2010).

---

[1]      We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Grewe.  *See State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

**ANALYSIS**

*I.      Sufficiency of Evidence*

**¶4**          A "driver of a vehicle involved in an accident resulting in injury" must "[i]mmediately stop the vehicle at the scene of the accident or as close to the accident scene as possible" and "[r]emain at the scene of the accident until the driver has fulfilled the requirements of section 28-663 [duty to give information]." A.R.S. § 28-661(A)(1)-(2) (2017).[2] If the driver fails to do so, and he knew someone was injured or he could have reasonably anticipated that the collision caused an injury, he will be held criminally liable. *State v. Porras*, 125 Ariz. 490, 493 (App. 1980).

**¶5**          Grewe argues the evidence was insufficient to support his conviction because the State failed to prove that the victim was injured and that Grewe knew or should have known that the motorcycle collision caused the injury. We will reverse a case based on insufficient evidence if "there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25 (1976)). *See also State v. Arredondo*, 155 Ariz. 314, 316 (1987) ("To set aside a jury verdict for insufficient evidence, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." (citation omitted)). We address claims of insufficient evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

**¶6**          The evidence established Grewe was travelling between 5 and 8 miles per hour when a mirror on his motorcycle struck the victim, causing the mirror to rotate 180 degrees. Grewe testified that, immediately after the collision, he noticed that his motorcycle's mirror "kept going around and around, it was unscrewing." Grewe also testified that, at the time of the collision, the victim "slammed into my shoulder, it's like I had a bad charley horse on my shoulder; and I seen him, he fell down, bounced off me. . . . [T]he center of [the victim's] chest hit my shoulder." The victim testified that he had crossed about two street lanes when he was hit by something and fell. The victim further testified that, after the incident, he noticed pain and bruising on his side and leg.

**¶7**          The foregoing evidence is sufficient for a reasonable juror to find that the collision injured the victim. Furthermore, based particularly

---

[2]      We cite the current version of this statute because no revisions material to this decision have occurred since the relevant date.

on Grewe's testimony that the collision knocked the victim off his feet and spun the motorcycle mirror around, and that he, Grewe, experienced pain in his shoulder, a juror could reasonably conclude Grewe knew, or should have known, the collision also injured the pedestrian he struck.[3] The trial evidence was, therefore, sufficient to support the verdict.

## II.    *Evidence of Fault*

**¶8**        The morning of the trial's first day, the State moved *in limine* to preclude Grewe from presenting evidence of the victim's purported fault in causing the collision with Grewe's motorcycle. The State specifically sought to preclude evidence of other instances where the victim crossed the street in a reckless manner, and evidence that either party caused the accident or was at fault. Over Grewe's objection, the court granted the State's motion, reasoning it was irrelevant under § 28-661 whether Grewe or the victim caused the accident. Grewe then unsuccessfully moved for a mistrial, arguing the State's motion was untimely.

**¶9**        Grewe argues the court erred in granting the State's motion *in limine* because evidence that the victim caused the accident by crossing the street in a bizarre manner was relevant to determine whether Grewe reasonably knew that the collision injured the victim. We generally review a trial court's evidentiary rulings for abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60 (2004).

**¶10**        Relevant evidence is generally admissible. Ariz. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ariz. R. Evid. 401. A trial court does not abuse its discretion by excluding irrelevant evidence. *See* Ariz. R. Evid. 402.

**¶11**        Here, whether the victim or Grewe was at fault for the accident was not relevant to determining Grewe's guilt. The applicable statute applies to drivers who are involved in an accident resulting in an injury to another person. A.R.S. § 28-661(A). Criminal culpability is not limited to those who cause vehicular accidents resulting in injury. The victim's apparent reckless manner in crossing streets was also irrelevant to

---

[3]        Grewe told the investigating officer that "he took the brunt of the damage[,]" indicating Grewe also believed the victim sustained at least some damage.

whether Grewe should have known that the collision resulted in the victim's injury.

¶12        In any event, Grewe testified as follows:

> [T]his guy is coming, you know, and he's got his arms down to his side and tilted forward like, what does he think, he's a missile, like a motorcycle? I said hey. I only yelled hey twice. The first time I yelled hey to get his attention. I thought he's going to stop, because it's like he's aiming at me, and why would anybody do that. And then he's not slowing down a bit.
>
> . . .
>
> So then he falls on the ground and I looked down and he's getting up, and I'm thinking what's he going to do for an [encore]? He just run across the street when I'm yelling at him to stop, he runs into me. I'm thinking I'm not sticking around to see what is he going to do, strangle me, or stick a knife in me.
>
> Q. Let me stop you there. Then, is your perception that you're running into him, or he's running into you?
>
> A. I didn't run, he ran. That's what I was saying at the scene. I kept saying he hit me. I kept saying he hit me. . . . [H]e tilted forward, running as fast as he can do, with his hands straight down at the sides.
>
> . . .
>
> I couldn't avoid him because I kept getting the impression when I yelled hey the second time, it seemed like he was homing in on my voice.
>
> . . .
>
> And if the [victim] hadn't did everything that he did, the guy would have walked home, I would have went to my meeting, and that would have been the end of it.
>
> . . .

> [I]t was like he was aiming at me; and he didn't run like a regular person[], and -- and he looked kind of strange; got his arms like somebody coming off a ski jump or something, and I'm thinking I couldn't believe it and I yelled hey, as loud as I could.
>
> . . .
>
> I said hey because he's running, he's not walking; so I was trying to get his attention before he comes over and hits me.

**¶13** Based on the above testimony and during his closing argument, Grewe argued that he perceived the victim to be positioned as a "missile coming after him." Thus, Grewe did not necessarily think the accident injured the man because he thought he was the one being attacked. Grewe further testified that the injured pedestrian was "an odd fellow, maybe a dangerous fellow, [and] someone he certainly wanted to get away from."

**¶14** Based on the foregoing evidence and argument, and despite the irrelevance of the victim's fault and erratic behavior of crossing the street in front of Grewe, Grewe was able to present his "no fault" defense to the jury. Consequently, any possible error in precluding evidence of fault did not prejudice Grewe.

**¶15** Regarding Grewe's contention that the trial court erred in denying his mistrial motion, we find no abuse of discretion. Grewe argues Arizona Rule of Criminal Procedure 16.1 required the State to seek suppression of the "fault" evidence by written motion no later than 20 days before trial. Ariz. R. Crim. P. 16.1(c) (noting the court may preclude any defense if not raised 20 days before trial, "unless the basis was not then known and could not have been known through reasonable diligence, and the party raises it promptly after the basis is known"). Grewe argues the State learned the basis of its motion *in limine* before Rule 16.1's 20-day limit because the State heard a witness describe the victim's habit of crossing streets recklessly at a defense-witness' interview six weeks before trial and based on Grewe's noticed defense of lack of knowledge regarding the victim's injury or that the accident caused the injury. Thus, according to Grewe, the State's verbal motion made on the first day of trial was untimely and a mistrial was warranted.

**¶16** We disagree. The record establishes that the State first became aware that Grewe would potentially interject fault as a trial issue right before trial commenced. The State immediately objected to Grewe's

anticipated evidence and moved to preclude it. Accordingly, the court acted within its discretion pursuant to Rule 16.1 to preclude the evidence. As a result, a mistrial based on the State's untimeliness would have been inappropriate. *See State v. Rankovich*, 159 Ariz. 116, 121 (1988) (finding motions for new trial are disfavored and should be granted with great caution). The court did not err in denying Grewe's motion for mistrial.

## CONCLUSION

¶17        Grewe's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA